**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James E. JACKSON, Sidney Stein, Fred
Fine, Alexander Trachtenberg, William
Norman and George Blake Charney,
Defendants-Appellants.**

**No. 233, Docket 24445.**

United States Court of Appeals
Second Circuit.

Argued June 5, 1958.

Decided Aug. 4, 1958.

Boris I. Bittker, New Haven, Conn.,
for defendants-appellants James E. Jackson, Sidney Stein, Fred Fine and William
Norman.

Mary M. Kaufman, New York City,
for defendants-appellants Alexander
Trachtenberg and George Blake Charney.

Morton S. Robson, Asst. U. S. Atty.,
New York City (Paul W. Williams, U. S.
Atty., William S. Ellis, Renee J. Gimsberg and John A. Guzzetta, Asst. U. S.
Attys., New York City, on the brief), for
plaintiff-appellee.

Before CLARK, Chief Judge, and
PICKETT and MOORE, Circuit Judges.

PICKETT, Circuit Judge.

Following the affirmance by the United
States Supreme Court of the conviction
of the national leaders of the Communist
Party in the United States of a conspiracy to violate the Smith Act [1] (Dennis v.
United States, 341 U.S. 494, 71 S.Ct. 857,
861, 95 L.Ed. 1137), the government embarked upon a nationwide program of
prosecutions against the lesser lights of
the Communist movement.[2] The indictments in these subsequent cases were
substantially identical, and in those
which were tried, the evidence followed
the same pattern. This appeal concerns
one of those cases in which the appellants
were convicted in the Southern District
of New York.

---

1. Pertinent portions of the Smith Act (18
U.S.C.A. § 2385), read: "Whoever
knowingly or willfully advocates, abets,
advises, or teaches the duty, necessity,
desirability, or propriety of overthrowing or destroying the government of the
United States or the government of any
State, Territory, District or Possession
thereof, or the government of any political subdivision therein, by force or violence, or by the assassination of any officer of any such government; or * *

"Whoever organizes or helps or attempts to organize any society, group, or
assembly of persons who teach, advocate,

or encourage the overthrow or destruction of any such goverment by force
or violence; or becomes or is a member
of, or affiliates with, any such society,
group, or assembly of persons, knowing
the purpose thereof * * *"

2. Similar indictments were returned
against communist members and functionaries in the States of California,
Missouri, Maryland, Michigan, Pennsylvania, Washington, Ohio, Colorado, Connecticut, Massachusetts, Hawaii, and
Puerto Rico. The indictments in each
of these cases named the Dennis case
defendants as coconspirators.

The indictment was returned on June 21, 1951, wherein it was charged that from April 1, 1945, and continuously thereafter up to and including the date of the filing of the indictment, the defendants conspired with each other and with those named as defendants in the Dennis case, "to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence," and to organize as the Communist Party of the United States, a society, group and assembly of persons to teach and advocate the overthrow and destruction of the government of the United States by force and violence.[3] That portion of the indictment having reference to the organization of the Communist Party was stricken by motion, and the case went to trial upon the issue that the defendants advocated and taught the duty and necessity of overthrowing and destroying the government of the United States by force and violence.

Subsequent to the trial of the case, the Supreme Court considered a Smith Act conviction on an indictment and evidence similar to that of this case. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356. There it was held that the Smith Act requires more than the teaching or advocacy of an abstract doctrine that the government should be overthrown by force and violence. The Court said that it must be clear in some fashion that the teaching and advocacy was directed to some sort of action, not merely to the belief in some abstract

doctrine. In distinguishing this extremely narrow difference between the advocacy or teaching which constitutes a violation and that which does not, the Supreme Court said: "The essential distinction is that those to whom the advocacy is addressed must be urged to *do* something, now or in the future, rather than merely *believe* in something" (354 U.S. 324, 325, 77 S.Ct. 1080). Summed up, the Court held that the Smith Act does not denounce advocacy or teaching in the sense of abstractly preaching the propriety and desirability of the forcible overthrow of the government, but reaches only an advocacy or teaching of action to accomplish such overthrow by force and violence.

A number of trial court errors have been assigned, but we shall consider only the sufficiency of evidence to sustain the conviction. Although the case was tried before the Yates decision, the United States urges that the evidence meets the "call to action" test. It is argued that the fundamental principle of Marxism-Leninism, as shown by the evidence, is that its goal of governmental overthrow can be achieved only by the use of force or violence; that the very purpose of the 1945 reconstitution of the Communist Party in the United States was to restore the party to the Marxist-Leninist concept of governmental change by the employment and use of force and violence;[4] that this overthrow was to be accomplished by education and teaching of the Marxist-Leninist doctrine through Communist schools, literature, and other

---

3. The defendants are sometimes referred to as the "second-string" Communist leaders in the United States. It was not shown that they operated as an organized group. Their principal connection was in their common membership and activity in the Communist Party. During the indictment period, the defendant Jackson functioned with the party in Michigan, Charney and Norman in New York, Fine in Illinois, and Stein's and Trachtenberg's activities were more or less nationwide.

4. In 1944, under the leadership of Earl Browder, the Communist Party in the

United States changed its name to the "Communist Political Association." The purpose of this change was stated as to enable the Communists, in the interest of national unity, to function most effectively in changed political conditions, and to make a greater contribution toward winning the war and securing a durable peace. The issue of socialism was not to be raised in form or manner which would endanger or weaken national unity. This was heresy to the hard core of the Communist Party. At a national convention in July, 1945, action was taken to return the party to the fundamental principles of Marx and Lenin.

means; that the very heart of this doctrine contemplates governmental overthrow by force and violence; that the party teachings concentrate attention on the problem of determining the proper time and manner of preparing members and others for participation in violent revolution; and that all of this was reiterated and re-emphasized in speech, in Communist literature, and in their classrooms.

This Court had occasion to consider and reject these contentions in United States v. Silverman, 2 Cir., 248 F.2d 671, certiorari denied 355 U.S. 942, 78 S.Ct. 427, 2 L.Ed.2d 422. The implication of the government's argument is that the evidence here meets the requirements of the Dennis and Yates cases, and that Silverman should not be followed. In the Silverman case the Court discussed the evidence in detail and concluded that it did not measure up to the "call to action" test of the Yates case, and that the record indicated that the United States could not do better on a second trial, and therefore directed a dismissal of the indictment.[5]

We accept and apply the law of the Silverman case to the facts of this case. No useful purpose would be served by a further reference to the evidence, by a reiteration of the principles announced in Silverman,[6] or by further examination and discussion of the classics and commentaries on the Marxist-Leninist theory of government.

The Court desires to express its appreciation to Professor Boris I. Bittker, of the Yale Law School, and his associates, assigned to represent certain of the indigent defendants. In carrying on the tradition of the legal profession, this burdensome task was assumed with the only compensation being the satisfaction of assisting in the administration of justice.

Judgment reversed and remanded with instructions to dismiss the indictment.

MOORE, Circuit Judge (concurring). I concur except I would remand for a new trial.

5. No contention is made here that there is any substantial difference in the evidence in the Silverman case and the case at bar.

6. Since the Yates decision, to our knowledge no pending Smith Act conviction has been affirmed. Some of the cases have been reversed for new trial as to certain defendants; some, including Silverman, were reversed with instructions to acquit the defendants. The government has dismissed the indictments as to some of the cases which were remanded for new trial. So far as we have been advised, there has not been a retrial of defendants in any case. See Bary v. United States, 10 Cir., 248 F.2d 201; United States v. Silverman, 2 Cir., 248 F.2d 671; United States v. Kuzma, 3 Cir., 249 F.2d 619; Fujimoto v. United States, 9 Cir., 251 F.2d 342; Sentner v. United States, 8 Cir., 253 F.2d 310; Wellman v. United States, 6 Cir., 253 F. 2d 601.